UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
    THEODORE UKPABI,

                            Petitioner,                  MEMORANDUM & ORDER

              -against-                               14-CR-00373 (NGG)
                                                          16-CV-2622 (NGG)

    UNITED STATES OF AMERICA,



                            Respondent.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Theodore Ukpabi ("Petitioner") brings a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (the "Petition"). (Mot. to Vacate ("Pet.") (Dkt. 27).) Petitioner argues that he is entitled to relief due to ineffective assistance of counsel during plea negotiations and sentencing under the Fifth, Sixth, and the Fourteenth Amendments of the United States Constitution. (See id. at 1-2.) Petitioner also brings claims of prosecutorial misconduct (id. at 17), and failure to bring a Grand Jury indictment (Suppl. Pet. (Dkt. 29) at 2). For the following reasons, the petition is DENIED.

I.    BACKGROUND

On June 4, 2014, Customs and Border Protection ("CBP") selected Petitioner for an examination after he arrived at John F. Kennedy International Airport ("JFK"). (Compl. (Dkt. 1) ¶¶ 1-2.) During the examination Petitioner admitted to ingesting 65 pellets of an unknown substance. (Id. ¶ 3.) Thereafter, Petitioner passed 66 pellets containing what appeared to be heroin.[1] (Gov't Suppl. Aff. (Dkt. 2) ¶ 2.)

---

[1] A Drug Enforcement Agency lab report (the "Report") confirmed that the pellets contained approximately 818.4 grams of heroin. (See Drug Enforcement Admin. Report ("Report") (Dkt. 32-1).)

1

On July 2, 2014, the Government charged Petitioner with two counts relating to the importation and intent to distribute heroin: one count of importation of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(3) ("Count One"); and one count of possession of heroin with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) ("Count Two"). (Indictment (Dkt. 6) at 1-2.)

On September 18, 2014, pursuant to a plea agreement, Petitioner pleaded guilty to Count One of the indictment. (See Min. Entry (Dkt. 13).) On February 12, 2015, after a sentencing hearing, the court sentenced Petitioner on February 12, 2015 to imprisonment for a term of twenty-four months followed by two years of supervised release. (See J. (Dkt. 17).) Petitioner subsequently filed an appeal in the Second Circuit, and Petitioner's counsel moved for permission to withdraw as counsel pursuant to Anders v. California, 386 U.S. 738 (1967). (See Mandate of 2d Cir. (Dkt. 25).) On December 18, 2015, the United States Court of Appeals for the Second Circuit granted Petitioner's counsel's Anders motion and rejected Petitioner's appeal. (Id.)

On May 23, 2016, Petitioner filed the present pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Pet.) Petitioner claims that he received ineffective assistance of counsel during the plea negotiations and sentencing. (See id. at 1-2.) Additionally, Petitioner brings claims of prosecutorial misconduct (id. at 17), and failure to bring a Grand Jury indictment (Suppl. Pet. at 2).

II. **LEGAL STANDARD**

Section 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), permits a prisoner who was sentenced in federal court to "move the court which imposed the sentence to vacate, set aside, or correct the sentence" when he claims "the right to be released upon the ground that the sentence was imposed," among other reasons, "in violation

2

of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). In § 2255 proceedings, the movant bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000). The statute directs courts to "grant a prompt hearing" on a § 2255 petition unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Additionally, "the pleadings of a pro se plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## III. DISCUSSION

### A. Petitioner Waived His Claims

Petitioner waived his right to file this petition in his plea agreement. "It is well established in this Circuit that a knowing and voluntary waiver of the right to appeal is enforceable." United States v. Cunningham, 292 F.3d 115, 117 (2d Cir. 2002) (citing United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001)). A waiver that is not limited to the right to appeal directly is no different, and a "knowing and voluntary waiver of the right," id. at 117, to bring a collateral attack is similarly enforceable. See Amoateng v. United States, No. 08-CV-5273 (DGT), 2009 WL 2242045, at *3 (E.D.N.Y. July 27, 2009) (finding that a petitioner had waived his right to collateral attack where the petitioner "knowingly and voluntarily waived his right to challenge his conviction . . . where the petitioner's sentence is within or below the Guidelines range stipulated by the plea agreement"); see also Philippe v. United States, No. 04-CV-3804 (CBA), 2007 WL 13414, at *1 (E.D.N.Y. Jan. 2, 2007) (finding that a petitioner had waived his right to collateral attack where his plea agreement barred him from pursuing a direct appeal and from "otherwise" challenging his sentence). In the plea agreement he entered into on September 18, 2014, Petitioner "agree[d] not to file an appeal or otherwise challenge, by petition

3

pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 33 months or below." (Plea Agreement (Dkt. 32-2) ¶ 4.) Petitioner's waiver thus explicitly includes a waiver of the right to bring a collateral attack on his sentence or conviction. Moreover, Petitioner received a sentence of 24 months (see J.), well below the 33-month cap on the waiver provision.

Petitioner does argue that he received ineffective assistance of counsel during plea negotiations, which can render a plea agreement unenforceable. See United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005) ("Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." (citing United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002))). However, as discussed below, Petitioner did not receive ineffective assistance of counsel during plea negotiations or at his plea hearing.

Thus, because Petitioner voluntarily waived his right to bring a collateral attack, Petitioner is procedurally barred from asserting claims pursuant to 28 U.S.C. § 2255.

**B.    Petitioner Did Not Receive Ineffective Assistance of Counsel**

Even if Petitioner had not waived his right to challenge the sentence, Petitioner's argument fails on the merits because he did not receive ineffective assistance of counsel. "[I]n order to prevail on an ineffective-assistance-of-counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." United States v. Jones, 482 F.3d 60, 76 (2d Cir. 2006) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). In applying this standard, "courts have required habeas petitioners to show that 'counsel's performance was so deficient and counsel's errors were so serious that he or she was not functioning as 'counsel' guaranteed by the Sixth

4

Amendment.'" Philippe, 2007 WL 13414, at *2 (quoting Cuevas v. Henderson, 801 F.2d 586, 589 (2d Cir. 1986)). "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. As "[t]here are countless ways to provide effective assistance in any given case," id. at 689, "[a] petitioner must also overcome the presumption that counsel's actions were reasonable tactical and strategic decisions." Philippe, 2007 WL 13414, at *2 (citing Strickland, 466 U.S. at 688). Moreover, "[t]o satisfy the prejudice element of the Strickland test in the context of a guilty plea, petitioner would have to show that he would have been acquitted or at least received a shorter sentence after conviction." Holman v. Ebert, No. 06-CV-3618 (BMC), 2007 WL 4591718, at *5 (E.D.N.Y. Dec. 28, 2007); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

Petitioner claims that he received ineffective assistance of counsel at two points during his criminal case: (1) during plea negotiations; and (2) during sentencing. The court addresses each claim in turn.

1. Plea Negotiations

Petitioner claims that his counsel was ineffective during plea negotiations for two reasons: (1) by failing to request the Drug Enforcement Agency Lab Report (the "Report") identifying the substance Petitioner had ingested; and (2) by failing to investigate the Report further. (See Pet. at 11-13.) However, Petitioner has failed to show that "counsel's performance was so deficient and counsel's errors were so serious" that he received constitutionally ineffective assistance of counsel. See Philippe, 2007 WL 13414, at *2 (quoting Cuevas, 801

F.2d at 589). During plea negotiations, the United States Attorney's Office for the Eastern District of New York estimated Petitioner's base offense level to be 30. (Plea Agreement ¶ 2). To receive a reduction in his offense level, Petitioner's counsel made several concessions: that Petitioner would participate in an Early Disposition Program[2] (which included an agreement that he would not request the Report), that Petitioner would accept responsibility for his actions, and that Petitioner would plead guilty on or before September 18, 2014. (Id.) Petitioner also agreed not to challenge the drug type and quality. (Id.) The concessions reduced Petitioner's offense level from 30 to 17, leading to a possible reduction in Petitioner's sentence, estimated to be between 24 and 30 months. (Id.)

Keeping in mind that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way," Strickland, 466 U.S. at 689, the court recognizes that Petitioner's counsel could have recommended that Petitioner accept these concessions as part of a strategy to guarantee Petitioner a lower sentence.

When CBP stopped Petitioner at JFK, Petitioner admitted to swallowing the pellets. (Compl. ¶ 3.) Because of this confession, and the fact that Petitioner subsequently passed pellets that tested positive for heroin (see Gov't Suppl. Aff. ¶ 2), Petitioner's counsel may well have made a strategic decision that making these concessions, declining to request the Report, and recommending that Petitioner accept the plea deal would provide the best outcome for his client. Indeed, if Petitioner's counsel did request the Report, Petitioner would not have qualified for the reduction of his offense level, and Petitioner's sentence likely would have been longer if convicted. (See Gov't Resp. in Opp'n to Pet. ("Resp. in Opp'n") (Dkt. 32) at 7.) Therefore,

---

[2] As part of the Early Disposition Program, a sentencing program in which a defendant receives a reduction in offense level for entering the plea agreement, Petitioner agreed to waive formal discovery. (Resp. in Opp'n at 3.)

Petitioner has not presented enough evidence to overcome the presumption that his counsel's actions were reasonable strategic decisions. Philippe, 2007 WL 13414, at *2 (citing Strickland, 466 U.S. at 688).

Even if Petitioner's counsel's performance did fall below an objective standard of reasonableness, Petitioner cannot show that his counsel's failure to request the Report prejudiced him. As discussed above, if Petitioner did not enter the plea agreement, Petitioner would not have qualified for the reduction of his offense level pursuant to the Early Disposition Program.[3] Moreover, the Report did not exonerate Petitioner. (See Drug Enforcement Admin. Report ("Report") (Dkt. 32-1).) Indeed, the Report confirmed that the substance Petitioner ingested was heroin.[4] (Id.) Thus, Petitioner cannot show that "he would have been acquitted or at least received a shorter sentence after conviction," Holman, 2007 WL 4591718, at *5, and has not shown that his counsel's failure to request the Report was prejudicial.

2. Sentencing

Petitioner also claims that he received ineffective assistance of counsel during sentencing. First, he argues that the Government violated Brady v. Maryland, 373 U.S. 83, 87 (1963) by failing to disclose the Report until sentencing, and that effective counsel would have "raised an objection instantaneously at sentencing." (See Pet.) Second, Petitioner asserts that effective counsel would have moved for acquittal at sentencing because the Government committed fraud by claiming that the Report had been given to Petitioner. (Id. at 14.) For the reasons discussed below, neither claim succeeds.

---

[3] Petitioner received several reductions of his offense level pursuant to the plea agreement. (See Plea Agreement ¶ 2.)

[4] Petitioner argues that the Report shows that the pellets tested negative for heroin (Pet. at 19-20), but Petitioner misreads the report. The lab did not test substance purity, and the "negative" Petitioner references relates to the decision not to test for substance purity, not a negative result for the presence of heroin. (See Report.)

### a. *Alleged Brady Violation*

Brady held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "There are three components of a Brady violation: The material evidence 'must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" United States v. Madori, 419 F.3d 159, 169 (2d Cir. 2005) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). "For Brady purposes, information is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987)).

In the instant case, the Government did not receive the Report until January 13, 2015, and, as soon as the Government received the Report, it disclosed the Report to Petitioner. (Gov't Sentencing Mem. (Dkt. 15) at 2 n.1.) Thus, the Government did not "willfully or inadvertently" suppress the Report. Madori, 419 F.3d at 169. Moreover, the Report was not material to Petitioner because, as discussed above, it does not exonerate him and would not have changed the outcome of the proceeding. See id. Therefore, no Brady violation occurred, and Petitioner's counsel was not ineffective for failing to object contemporaneously.

### b. *Acquittal Motion*

Next, Petitioner claims that effective counsel would have moved for acquittal at sentencing because the Government committed fraud by incorrectly claiming that the Report had been given to Petitioner. (See Pet. at 14.) As discussed above, the Government received a copy of the Report on January 13, 2015 and gave Petitioner a copy of the Report shortly thereafter.

Additionally, at sentencing, defense counsel confirmed that they had received the Report and shared it with Petitioner.[5] (Sentencing Tr. (Dkt. 32-4) at 2:15-22.) Petitioner's claim of fraud is thus without merit, and Petitioner's counsel was not constitutionally ineffective for failing to move for acquittal.

### 3. Prosecutorial Misconduct and Failure to Bring a Grand Jury Indictment

Finally, Petitioner brings claims of prosecutorial misconduct and failure to bring a grand jury indictment. First, he argues that the Government improperly failed to disclose the Report, that it committed fraud by claiming it had disclosed the report, and that it falsified evidence against him. (Pet. at 17.) As discussed above, however, the Government disclosed the Report as soon as practicable, and did not commit fraud by claiming to have given Petitioner a copy of the Report because it had in fact done so (see Sentencing Tr. at 2:15-22). Further, the only evidence Petitioner provides in favor of his claim that the Government falsified evidence against him is that the amount of heroin estimated in the original Presentence Investigation Report differs from the amount indicated in the Report. (See Pet. at 19-21.) However, as the Government explains, the discrepancy between the two amounts is because the Presentence Investigation Report's estimate was a conservative estimate made before the Report was finalized. (Resp. in Opp'n at 8 n.4.) Therefore, Petitioner's claim that the Government falsified evidence fails.

Moreover, the Grand Jury did indict Petitioner. (See Indictment.) Petitioner's claim that the Government failed to bring a grand jury indictment is thus similarly without merit.

---

[5] Defense counsel received the Report through a second addendum to the Presentence Investigation Report. (Resp. in Opp'n at 11.)

## IV. CONCLUSION

For the reasons set forth above, Petitioner Theodore Ukpabi's (Dkt. 27) petition for a writ of habeas corpus is DENIED. Further, this court has considered all of Petitioner's arguments and considers them to be without merit. Because the Petitioner has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not be issued. See 28 U.S.C. § 2253(c). In addition, this Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully DIRECTED to mail a copy of this order by certified mail, return receipt requested, and by regular mail with proof of mailing, to pro se Petitioner Theodore Ukpabi at his address of record.

SO ORDERED.

Dated: Brooklyn, New York
June 19, 2019

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge